<u>Not for Publication</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

LAURENCE J. LIEBOWITZ, P. THOMAS
TOURSO, JORDAN LIEBOWITZ, and DAVID
B. ZOLOTOROFE,

        *Plaintiffs,*

   v.

DANIEL RICHMAN,

        *Defendant.*

Civil Action No. 21-16538

<u>OPINION</u>

---

<u>John Michael Vazquez, U.S.D.J.</u>

This case arises out of the unconsummated sale of a limited liability company's ("LLC") member's stake in the company to its other members. Currently pending is the motion of Defendant Daniel Richman to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendant's motion is **GRANTED in part** and **DENIED in part**. All parties' requests for fees and Plaintiff's motion to file a sur-reply are **DENIED**.

### I.    BACKGROUND

The parties are the members of Landmark Howell, LLC ("Landmark"). D.E. 1 ("Compl.") ¶¶ 1, 4, 9. Landmark is a New Jersey limited liability company, organized in 2012 to develop and

---

[1] Defendant's brief in support of the motion, D.E. 2-2, will be referred to as "D. Br." Plaintiffs' brief in opposition, D.E. 3, will be referred to as "Opp'n." Defendant's reply to the opposition, D.E. 4, will be referred to as "D. Reply."

operate commercial real estate in Howell Township, New Jersey (the "Property").  *Id.* ¶¶ 1-2. Plaintiffs and Defendant are members of Landmark, and Richman holds a 15% interest.  *Id.* ¶ 11.

The parties executed an Amended and Restated Operating Agreement (the "Operating Agreement" or "Op. Agreem.") in January 2015.  Compl. ¶ 10.  *See also id.* Ex. A (a copy of the Operating Agreement).  Section 12 of the Operating Agreement is entitled "RESTRICTIONS AGAINST DISPOSITIONS." Op. Agreem. § 12.  Section 12.1 provides in relevant part that "[n]o Member shall make any Disposition unless the Disposition is made in accordance with the provisions of this Section 12.  Any Disposition contrary to the provisions of this Section shall be void."  *Id.* § 12.1.  The Operating Agreement defines "Disposition" as "[a] transfer, gift, assignment, pledge or other disposition of all or any part of a Membership Interest."  *Id.* § 1.

Section 12.3.7 provides an exception to non-disposition and provides in relevant part as follows:

> Notwithstanding anything in this Agreement to the contrary, after Project Stabilization, Richman, upon notice to the Company and the other Members (a "Put Notice"), may elect to sell his entire Membership Interest in the Company to the other Members.  Should Richman make this election, the other Members shall, pro rata to their respective Membership Interests, within forty-five (45) days of receipt of Richman's Put Notice and the Appraisal (hereafter defined), pay to Richman an amount equal to twelve and one half percent (12.5%) of the then Fair Market Value of the Property, less all then existing Financing on the Property and debt of the Company (the "Put Price").  For purposes of this Section 12.3.7, "Fair Market Value" shall be determined by an appraisal ("Appraisal") prepared and issued by a licensed MAI appraiser with not less than ten (10) years experience in performing commercial, retail real estate appraisals in New Jersey (an "Appraiser"), selected jointly by the Manager[2] and Richman. . . .  The determination of the Appraiser as reflected in the Appraisal shall be final and binding on the parties to establish the Put Price.  The purchasing Members shall pay the Put Price to Richman and Richman shall assign all of his right, title and interest in and to his Membership Interest to the purchasing

---

[2] The Operating Agreement designates Liebowitz as "the Manager."  D.E. 1 at 24.

> Members (or their Affiliate) within thirty (30) days following receipt of the Appraisal.  It is the intention of the Members that the Put Price shall be equal to 12.5% of the net equity which the Company has in the Property.

*Id.* § 12.3.7.

By way of a January 12, 2021 email, Richman informed the other members of Landmark that he wished to sell his membership interest.  Compl. ¶ 14.  Richman suggested that, instead of following the procedures of Section 12.3.7, the other members should pay him (on a pro rata basis) the value of his 15% interest, which he estimated to be $600,000.  *Id.* ¶¶ 14-15.  He further estimated that $534,091 was the fair market value of 12.5%, referring to that amount as the "Put Notice Value."  *Id.* ¶ 16.  On behalf of himself and the other members, Liebowitz countered with $485,000. *Id.* ¶ 17.  Negotiations continued, and in March of 2021, Liebowitz and Richman agreed to a price of $550,000.  *Id.* ¶¶ 18-19.  David B. Zolotorofe, another Landmark member, was tasked with preparing a written agreement that would assign Richman's interest to the other members.  *Id.* ¶ 20.  Zolotorofe sent a draft to Richman through a May 4, 2021 email, and Richman responded with comments that, according to Plaintiffs, did not touch "upon any material terms, including the agreed-upon purchase price."  *Id.* ¶ 21.  Zolotorofe's email also indicated that the buying members might allocate Richman's interest amongst themselves in a manner different from that initially proposed, but assured Richman that any change would not impact him.  *Id.* ¶ 22.  In the succeeding months, the purchasing members informed Richman "that steps to secure payment were being taken" and that certain of his comments were being integrated into the assignment.  *Id.* ¶¶ 23-24.  The LLC also continued to pay monthly distributions to Richman.  *Id.* ¶ 24.

On August 9, 2021, Richman's attorney sent a letter to the other members.  *Id.* ¶ 26; *see also id.* Ex. B (copy of the letter).  The letter stated that if Richman did not receive an executed agreement and full payment by 5 p.m. on August 12, 2021, he would consider the offer to sell his

membership interest withdrawn.  Compl. ¶ 26.  In an email sent at 2:27 p.m. on August 12, Zolotorofe said that the final version of the sale agreement would be circulated for the Members' signatures that day.  *Id.* ¶ 29.  He also asked for wiring instructions, but Richman did not respond. *Id.* ¶¶ 30-31.  The following day, August 13, Liebowitz sent Richman the assignment agreement, which had been signed by the other Landmark members, as well as a check for $550,000.  *Id.* ¶¶ 32, 34.  Richman received the document and the check at 9:37 a.m. on August 14, 2021.  *Id.* ¶ 36. Richman did not sign the agreement or cash the check; instead, on August 16, 2021, Richman sent a letter to Liebowitz invoking the Put Notice procedure of Section 12.3.7.  *Id.* ¶ 37.

This mater was originally filed in the Superior Court of New Jersey.  D.E. 1.  Plaintiffs brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.  Compl. ¶¶ 42-67.  Defendant removed the case to this Court and then moved to dismiss. D.E. 1; D.E. 2.  Both sides also seek fees and costs.  In addition, Plaintiffs sought permission to file a sur-reply, which Defendant opposed.  D.E. 5; D.E. 6.

## II.    STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient

facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).   A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).   If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).[3]

### III. ANALYSIS

Because Defendant invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court must determine which state's law applies.   *Verify Smart Corp. v. Bank of Am., N.A.*, No. 17-4248, 2019 WL 1594474, at *4 (D.N.J. Apr. 15, 2019).   In diversity cases, courts look to the choice-of-law rules of the forum state—here, New Jersey—to decide which body of substantive

---

[3] In deciding this motion, the Court considers the Operating Agreement; the August 9, 2021 letter from Todd E. Soloway, Esq., on behalf of Defendant; and the August 13, 2021 letter from Liebowitz because all were referenced in the Complaint and attached as exhibits.  Fed. R. Civ. P. 10(c); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

The parties also attached numerous exhibits to their submissions.  *See* D.E. 2-1; D.E. 3-1.  The Court cannot consider documents that were not attached to the Complaint or were not integral to it without converting the motion into one for summary judgment.  Fed. R. Civ. P. 12(d); *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999).  The Court declines to convert the motion. *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 131 (D.N.J. 2000) ("A court should not convert a motion[] . . . when little or no discovery has occurred.").  The Court declines to convert this motion to one for summary judgment.

law controls.  *Collins ex rel. Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017).  The Operating Agreement provides that it is governed by New Jersey law.  Op. Agreem. § 16.13.  "New Jersey choice-of-law rules provide that '[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'" *Collins*, 874 F.3d at 183 (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)).  The parties also rely on New Jersey law.  As a result, the Court decides the motion in accordance with New Jersey law.  *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir.1999)).

The Court now turns to the issues raised.

### A. Substantive Claims

### 1. Breach of Contract & of the Implied Covenant

Defendant seeks to dismiss Plaintiffs' breach of contract claim, arguing that Plaintiffs have not sufficiently pled that a valid contract existed.  D. Br. at 8-14.  In support, Defendant makes two arguments:  (1) Defendant did not waive the mandatory put notice provision of Section 12.3.7 of the Operating agreement, and (2) Plaintiffs have not alleged an offer and acceptance of all essential terms.  *Id.*  In response, Plaintiffs assert that Section 12.3.7 was permissive and that they did allege all essential terms of the verbal contract.  Opp'n. at 7-20.

While the parties couch the issue in terms of whether Section 12.3.7 is mandatory or permissive, it appears to the Court that the issue is somewhat different.  That is, the parties appear to disagree as to whether Section 12.3.7 was the *only* provision pursuant to which Richman could sell his interest to the other members.  Because the parties' arguments are not entirely clear, the

6

Court analyzes both issues:  whether the section is mandatory or not and whether the section was the sole means by which Richman could sell his interest.

To sustain a claim for breach of contract, a party must first show that there was a valid contract.  *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021).  The Court must first interpret Section 12.3.7 to determine whether it was permissive or mandatory.  The Court concludes that it is permissive as to Richman.

"The principal goal of contract interpretation is to 'ascertain and effectuate the objectively manifested intentions of the contracting parties.'"  *Heffron v. Adamar of N.J., Inc.*, 270 F. Supp. 2d 562, 570 (D.N.J. 2003) (quoting *Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir. 1999)).  "A basic tenet of contract interpretation is that contract terms should be given their ordinary and plain meaning."  *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 199 A.3d 766, 788 (N.J. 2019).  Moreover, a single provision of a contract should not be read in isolation, but rather must be read in context.  *Imagine Lifestyles, LLC v. Perry*, No. 19-17445, 2020 WL 113967, at *4 (D.N.J. Jan. 10, 2020) (citing *New Castle Cnty. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 174 F.3d 338, 349 (3d Cir. 1999)).  "If the contract into which the parties have entered is clear, then it must be enforced as written."  *Serico v. Rothberg*, 189 A.3d 343, 350 (N.J. 2018) (quoting *In re Cnty. of Atl*., 166 A.3d 1112, 1122 (N.J. 2017)).

Section 12.3.7 of the Operating Agreement provides, in part, that "[n]otwithstanding anything in this Agreement to the contrary, after Project Stabilization, Richman, upon notice to the Company and the other Members (a 'Put Notice'), *may* elect to sell his entire Membership Interest in the Company to the other Members.  *Should Richman make* this election, the other Members *shall* . . . ."  Op. Agreem. § 12.3.7 (emphases added).  Section 12.3.7 thus created a carveout for Defendant if he wanted to dispose of his membership interest by selling to the other

members "after Project Stabilization[.]" *Id.* Under this provision, Defendant had the option of selling his membership interest for a certain amount—"12.5% of the net equity" provided the parties followed the provision's requirements. *See Aponte-Correa v. Allstate Ins. Co.*, 744 A.2d 175, 179 (N.J. 2000) ("Under the 'plain meaning' rule of statutory construction, the word 'may' ordinarily is permissive and the word 'shall' generally is mandatory."). If Richman invoked the provision properly, then the other members were to pay Defendant the put price as determined by an appraisal. This means that the section was permissive as to Defendant and then mandatory as to Plaintiffs if Defendant invoked the provision. Defendant had the choice to invoke the section, and, once invoked, Section 12.3.7 laid out mandatory next steps.

Thus, the Court disagrees with Defendant that Section 12.3.7 was mandatory as to him such that a waiver was necessary. The section was not mandatory in the sense that Richman had to invoke it and it was not mandatory in the sense that it was the only mechanism by which Richman could sell his membership interest. While Section 12.3.7 appears to have been included solely for Richman's benefit, Section 12 also includes other provisions that appear applicable to all members, including Richman.[4] Nothing in Section 12.3.7 indicates that it was Richman's only

_____

[4] For example, Section 12.3 provides in part as follows:

> If a Member wishes to Dispose of such Member's Membership Interest or any portion thereof (a "Disposing Member") to a Person (except as contemplated by Section 12.2), the Disposing Member must first offer such Membership interest for sale to the other Members (the "Non-Disposing Members") by written notice (the "First Offer Notice"), which First Offer Notice must specify the purchase price and payment terms the Disposing Member will accept. The Non-Disposing Member(s) will have the right (the "Right of First Offer") to purchase all (but not less than all) of the Disposing Member's Membership Interest which it seeks to Dispose of for the price and upon the terms and conditions specified in the First Offer Notice. The Non-Disposing Member(s) will have forty-five days from the date the First Offer Notice is given (the "Right of

avenue through which to sell his interest, and nothing in the other provisions states that members did not include Richman.   In fact, the Complaint indicates that Richman had the same understanding when he offered to sell his entire interest rather than seek the "Put Notice Value." Compl. ¶ 16.  Accordingly, the Court finds that Defendant's first argument falls short.

Turning to Defendant's second argument, New Jersey contract law "requires an 'offer and acceptance' by the parties, and the terms of the agreement must 'be sufficiently definite [so] that the performance to be rendered by each party can be ascertained with reasonable certainty.'"  *GMAC Mortg., LLC v. Willoughby*, 165 A.3d 787, 794 (N.J. 2017) (alteration in original) (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)).  For a contract to be formed, the parties must "agree on essential terms and manifest an intention to be bound by those terms[.]"  *Weichert*, 608 A.2d at 284.  However, "[w]here the parties do not agree to one or more essential terms, . . . courts generally hold that the agreement is unenforceable."  *Id.*

Defendant asserts that the Complaint does not plead that a valid contract existed because it fails to include the essential term of a closing date and because any agreement was conditioned on certain events, such as Plaintiffs' ability to obtain financing.  D. Br. at 9-14.  The Court disagrees. According to the Complaint, an agreement was reached on the essential terms, that is, the purchase price of $550,000 for the entirety of Richman's membership interest.  As to the closing date, a case relied on by Defendant provides the answer.  In *JSA Surgical Facilities, LLC v. Center for Special*

---

First Offer Exercise Deadline") to exercise the Right of First Offer by written notice ("Acceptance Notice") to the Disposing Member.

The Operating Agreement defines a "Person" as "[a]ny individual, limited liability company, partnership, corporation, trust, or other entity."  *Id.* § 1.

Defendant does touch upon Section 12.3 in his reply, D. Reply at 2-3, but since this issue was not raised in his moving brief, the Court does not reach it at this time.

*Procedures, LLC*, No. A-0178-18T4, 2019 WL 5884214, at *3 (N.J. Super. Ct. App. Div. Nov. 12, 2019), the Appellate Division remarked that the lower court "rightly concluded that . . . ordinarily where no time for performance is fixed, a reasonable time is prescribed by the court[.]" The Court cannot conclude at this stage based on the allegations in the Complaint that a closing in August 2021 was unreasonable as a matter of law.  Moreover, as to Plaintiffs' indication that they were obtaining funds to pay for Richman's membership interest, *JSA* is inapposite.  In *JSA*, a buyer made clear to the seller that the buyer needed to delay closing so that he could obtain financing. *JSA*, 2019 WL 5884214, at *4.  Here, the Complaint reflects that Plaintiffs agreed to the purchase price of $550,000.  There are no allegations that Plaintiffs also indicated that they needed to extend the closing date to obtain financing.  The Court also disagrees with Defendant's second argument.

For the foregoing reasons, Defendant's motion to dismiss Count One is denied.

As to the other alleged breach, "[a] covenant of good faith and fair dealing is implied in every contract in New Jersey."  *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). Thus, a prerequisite to a breach of the implied covenant of good faith and fair dealing is the existence of a valid contract in the first place.  Where a litigant fails to adequately allege the existence of a contract, a litigant cannot allege breach of the covenant of good faith and fair dealing. *Kenny v. Onward Search*, No. 15-0456, 2015 WL 1799593, at *3 (D.N.J. Apr. 15, 2015). Defendant's lone argument is that because Plaintiffs have not plausibly pled that a valid contract exists, their implied covenant claim also fails.  D. Br. at 14-15.  Because the Court has not dismissed the breach of contract count, Defendant's motion to dismiss Count Two is also denied.

**2. Promissory Estoppel**

Plaintiffs also bring a claim for promissory estoppel.  Under New Jersey law, the elements of promissory estoppel are "(1) a clear and definite promise; (2) made with the expectation that

the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb*, 245 A.3d at 577-78 (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)).   The main justification for promissory estoppel "is to avoid the substantial hardship or injustice which would result if such a promise were not enforced." *Newark Cab Ass'n v. City of Newark*, 235 F. Supp. 3d 638, 648 (D.N.J. 2017), *aff'd*, 901 F.3d 146 (3d Cir. 2018) (quoting *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc*., 704 A.2d 1321, 1324 (N.J. Super. Ct. App. Div. 1998)).   A litigant cannot prevail on a claim of promissory estoppel without showing detrimental reliance.  *Est. of Cohen ex rel. Perelman*, No. A-0713-10T1, 2013 WL 5476569, at *14 (N.J. Super. Ct. App. Div. Oct. 3, 2013).

Defendant contests the fourth element—that any reliance on Defendant's promise did not result in definite and substantial detriment to Plaintiffs.  D. Br. at 15.  Plaintiffs largely recite the legal requirements for a promissory estoppel claim and fail to plausibly allege how they suffered definite and substantial detriment in reliance on Defendant's promise.  *See, e.g.*, *Aircraft Inventory Corp. v. Falcon Jet Corp*., 18 F. Supp. 2d 409, 417 (D.N.J. 1998) (finding promissory estoppel inapplicable where plaintiff failed to establish that significant resources were expended in reliance on the defendant's promise, such as securing financing, borrowing money, incurring interest expenses, increasing assets, incurring liability to a third party, or expenditure of out-of-pocket expenses).

Plaintiffs argue that they suffered definite and substantial detriment by securing the necessary funds to pay the purchase price, incurring expenses in preparing the sale contract, making continued monthly distributions to Defendant, and making continued mortgage payments on the property in question, which, Plaintiffs argue, have the effect of increasing the monetary value of Defendant's membership interest.  Opp'n at 22 (citing Compl. ¶¶ 22-24, 35).  Plaintiffs'

arguments as to the mortgage payments, the effort in securing funds, and the incurred expenses are based on new facts that are absent from their Complaint.  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc*., 836 F.2d 173, 181 (3d Cir. 1988) (alteration in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).  As a result, the Court does not consider these new allegations.  The continued monthly distributions to Richman do not constitute a substantial detriment because the Operating Agreement already required those distributions to be made.  *Cf. Goldfarb*, 245 A.3d at 578 ("Promissory estoppel[] … requires … that the moving party reasonably relied *on the promise*.") (emphasis added).  When stripped of these new factual allegations, the Complaint merely assert detrimental reliance in a conclusory manner.

For the foregoing reasons, Defendant's motion to dismiss the promissory estoppel claim is granted.

### B. Motion for Fees

Both parties seek attorneys' fees and costs, pointing to Sections 15.1.1 and 15.2 of the Operating Agreement in support.  D. Br. at 23; Opp'n at 16.  The requests are premature.  There has been no adjudication as to whether there has been an "Event of Default" under Section 15.1.1 so as to trigger the remedies provided by Section 15.2.

### C. Sur-Reply

Plaintiffs seek the Court's permission to file a sur-reply based on allegedly "new" arguments made by the Defendant in his reply brief.  D.E. 5.  The Court typically does not consider new arguments in a reply brief.  *Cobra Enters., LLC v. All Phase Servs., Inc*., No. 20-4750, 2020 WL 2849892, at *1 (D.N.J. June 1, 2020).  And here, the Court did not address any new arguments

potentially raised for the first time in Defendant's reply brief.  *See* D. Br. at 1-4, 8-9, 15-16. Consequently, the arguments presented in the sur-reply do not impact the Court's analysis. Plaintiffs' request to file a sur-reply is denied.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted, both sides' requests for fees and costs are denied, and Plaintiffs' request to file a sur-reply is denied.  An appropriate Order accompanies this Opinion.

Dated: April 22, 2022

John Michael Vazquez, U.S.D.J.